**EXHIBIT 2**

# CREDIT UNION SUPPORT SERVICES AND

# CORRESPONDENT MORTGAGE LENDING

# AGREEMENT

This Agreement is entered into as of May _6th_, 2004, between LORIMAC, INC., a Delaware Corporation having an office at 1000 Clifton Avenue, Clifton New Jersey 07013 (hereinafter known as "LORIMAC"), and POCATELLO RAILROAD FEDERAL CREDIT UNION , a Credit Union having an office at 216 West Whitman, Pocatello, ID 83204 (hereinafter known as "Credit Union"), (hereinafter also collectively known as "the parties").

## Background

This Agreement governs LORIMAC's provision of Loan Production Services (as defined herein) to the Credit Union with respect to mortgage financing opportunities referred to LORIMAC by the Credit Union. If LORIMAC provides Loan Production Services and the loan closes (a "Loan"), Credit Union agrees to transfer the servicing rights in and all Loans made by Credit Union to LORIMAC (at the closing of such Loan) on the terms described in this Agreement. LORIMAC has the right to assign any of these servicing rights to its affiliate, TISERV, INC., a Delaware corporation ("TISERV"), and LORIMAC may act as sub-servicer for TISERV.

As a value added feature to LORIMAC's Loan Production Services, LORIMAC will also provide the following Associated Program Services as well as the specific services described in Section IV (the "Associated Program Services"): reasonable and customary set-up, marketing, and consultation services in connection with loan opportunities referred to LORIMAC, and

**EXHIBIT 2**

transparent delivery of those services, and assistance in cross-selling other related Credit Union services. Credit Union recognizes that it is receiving Associated Program Services at a discounted rate as additional consideration for the Credit Union's agreement to transfer the mortgage servicing rights to LORIMAC for each Loan.

Credit Union recognizes that LORIMAC is not the Lender, and that Credit Union will comply with all applicable federal and state laws, rules, and regulations in making Loans. Credit Union understands that LORIMAC is an agent of Credit Union retained to originate, process, underwrite, seek Credit Union's disposition of each Loan, assist Credit Union to close their loan, arrange for Credit Union to fund, and to service such Loans for Credit Union or any secondary market vendor (in the event the Loan is sold by or on behalf of the Credit Union, or if such Loan is not added to the Credit Union's own portfolio).

The term "Loan Production Services" includes the specific procedures outlined in Section I below, as well as the following services to the extent they are reasonably and customarily related to the processing and making of a particular real estate loan by the Credit Union:

1.    Informing Credit Union members (the "Members") directed to LORIMAC by Credit Union regarding the availability of real estate financing from Credit Union.

2.    Taking information provided by such Member and filling out the application of the Member on behalf of Credit Union;

3.    Reviewing the applicant Member's income and debt and pre-qualifying such Member to determine the maximum mortgage amount available to

the Member as determined by written Underwriting Guidelines (defined below in Section I) approved by the Credit Union.

4. Informing applicant Members about the home buying and financing process, and the different types of loan products available, and demonstrating how closing costs and monthly payments vary under each loan product offered by Credit Union;

5. Collecting financial information (tax returns, bank statements) and other documents required as part of Credit Union's application process;

6. Ordering VOEs (verifications of employment) and VODs (verifications of deposit) on behalf of Credit Union;

7. Ordering requests for mortgage and other loan verifications on behalf of Credit Union;

8. Ordering appraisals on behalf of Credit Union;

9. Ordering inspections or engineering reports on behalf of Credit Union;

10. Providing required disclosures (truth-in-lending, good faith estimate, or others) to the Member(s) on behalf of Credit Union;

11. Assisting Member(s) in understanding and clearing related credit problems;

12 Maintaining regular contact with applicant Member(s), realtors, and Credit Union between the application and closing of a Loan to apprise them of the status of the application with Credit Union and gather any additional information that Credit Union requires;

13.     Ordering or preparing legal and closing documents on behalf of Credit Union to reflect the mortgage loan transaction approved by Credit Union;

14.     Obtaining a determination of the secured property's flood plain status;

15.     Scheduling and participating in closing Loans on behalf of Credit Union;

16.     Linking Credit Union to the LORIMAC Web-site for on-line member services provided by LORIMAC, if requested by Credit Union; and

17.     Providing Credit Union access to view the status of Loan Production Services on a particular application.

## SECTION I

## LOAN PRODUCTION SERVICES: SPECIFIC PROCEDURES

If Credit Union refers a mortgage loan opportunity that is accepted by LORIMAC, LORIMAC will provide the specific Loan Production Services described below in accordance with the Underwriting Guidelines. Where Loans processed by LORIMAC are to be held in the portfolio of the Credit Union, LORIMAC shall process these Loans in compliance with the Underwriting Guidelines of Credit Union. Underwriting Guidelines shall mean the written procedures (including documentation standards) provided by Credit Union, a copy of which is attached hereto as Schedule "A" and which Credit Union shall be responsible to update on an ongoing basis in accordance with this Agreement. In the event, Credit Union does not possess real estate policies and procedure manuals, LORIMAC will supply Credit Union with secondary market information relative to the Credit Union's extension of residential mortgage financial services, and Credit Union shall adopt and attach Underwriting Guidelines based on that information.

a.     <u>Authorization</u>. Credit Union shall inform LORIMAC of a Member's need for mortgage financing being offered by Credit Union for the purchase or refinance of said Member's property. Such Member will contact LORIMAC to obtain mortgage financing to be made available by Credit Union as lender. Credit Union shall permit LORIMAC reasonable access to information held by Credit Union about the Member(s) for the purposes of counseling and pre-qualifying the Member(s), taking any Member's application on behalf of Credit Union and as otherwise needed to support LORIMAC's ability to perform its support services for Credit Union. In fulfilling LORIMAC's responsibilities to Credit Union as set forth in this Agreement, LORIMAC shall act as Credit Union's agent and shall be authorized to receive, transmit, and otherwise process the Member's confidential financial information provided through the Loan application process. The Credit Union authorizes LORIMAC to have its Member sign any and all necessary documentation authorizing the release of confidential information concerning its application being processed by LORIMAC on behalf of Credit Union and in furtherance of its obligations as set forth in this Agreement.

b.     <u>Prequalification</u>. Upon contact by a Member for mortgage financing, LORIMAC shall utilize its staff of residential real estate support professionals ("Support Representatives") to extend counseling services and pre-qualify the Member for an appropriate mortgage program offered by or through Credit Union. A Support Representative will call such Member to identify and explain the availability of Credit Union's mortgage programs. LORIMAC shall provide an explanation of the various types of mortgage financing available from Credit Union including the interest rate and other key terms and conditions of the mortgage loan as set by the Underwriting Guidelines of the Credit Union or its approved secondary market vendor(s). The Support Representative shall review the financial information supplied by the

Member to determine the mortgage amount such Member is pre-qualified to obtain from the Credit Union. LORIMAC shall inform the Member about the full range of mortgage products and services made available by or through Credit Union. These products and services may be made available by Credit Union directly or via approved secondary market vendor(s).

c.    <u>Loan Application</u>. Once LORIMAC pre-qualifies the Member, the Support Representative shall complete the Member's loan application by telephone on behalf of Credit Union.  The Support Representative shall obtain all information and documentation required to process the Member's mortgage request.  Any additional disclosure documentation or forms required pursuant to applicable federal or state statutes and regulations, or by applicable secondary market requirements, shall be provided to the Member after completion of the application and mailed or delivered to the Member in three business days or as otherwise required by law.

d.    <u>Loan Processing</u>.  LORIMAC shall process each application in a reasonably expeditious and efficient manner, and in a manner consistent with customary secondary market practices.  LORIMAC shall assist Credit Union in it making mortgage loans in the amounts requested by its Members and for which such Members pre-qualify under the Underwriting Guidelines and any other written standards to which the parties agree.

The processing services by LORIMAC shall include complete documentation of the loan application,  a review of all financial and collateral data provided by the Members on behalf of Credit Union.

e.    <u>Lending Decision</u>.  Credit Union shall be presented with a summary of the Member's loan request,  and LORIMAC's related findings,  on LORIMAC's Uniform Underwriting and Transmittal Summary Form (i.e.: FNMA 1077), which shall be electronically

transmitted, hand delivered, facsimiled or mailed to Credit Union for review and final disposition. Promptly thereafter, Credit Union shall advise LORIMAC by written notice of Credit Union's decision to deny or approve the mortgage loan. If the Credit Union decides to deny the loan, LORIMAC shall prepare the adverse action notice to the Member for Credit Union's endorsement, and LORIMAC will deliver the adverse action notice to the Member once the endorsed copy is received from Credit Union. If Credit Union decides to approve the loan, Credit Union shall issue a final written commitment and shall also notify LORIMAC whether Credit Union will fund and retain the Loan ("Portfolio Loans") or fund and sell the Loan to a secondary market buyer ("Sold Loans").

        f.      <u>Closing Services</u>. For loans approved by Credit Union, LORIMAC will schedule a closing at the reasonable convenience of the Member and advise Credit Union of Members intent to close the mortgage loan no less than two (2) business days prior thereto, unless otherwise agreed to by the parties. LORIMAC shall close the Loan on behalf of Credit Union and have the appropriate documents recorded, and set up the Loan for servicing. The Credit Union shall receive copies of all documentation for its Loans that it demands on an ongoing pre-established basis with LORIMAC.

        2.      **Consideration paid to LORIMAC for Loan Production Services.**

        a.      <u>Fees</u>. For loans held in the Credit Union's own portfolio, Credit Union shall pay LORIMAC Eighty-Five (85) B.P. ($100,000.00 x 85 B.P. = $850.00) of the original principal balance of each Loan made by Credit Union as consideration for Loan Production Services. These fees are due and payable at the time of issuance of Credit Union's final commitment to the Member.

b.    Change in Fees.  LORIMAC may change the fees for the Loan Production Services upon sixty (60) days written notice.

## SECTION II

## CORRESPONDENT LOAN SUPPORT PROGRAM

In the event a Member requests services or products offered in the secondary market but which are not offered by the Credit Union, the Credit Union will refer the Member(s) desiring such services or products ("Special Products") to LORIMAC.  LORIMAC will make reasonable efforts to locate lenders for the Credit Union to provide such Special Products to its Members.

a.    General.  Credit Union will refer Members requesting Special Products to LORIMAC as Credit Union's designated support services organization.  LORIMAC will make reasonable efforts to locate a lender that may, at its discretion, provide the Credit Union Member(s) the mortgage loan or other Special Product required by the Member.  Credit Union will not acquire any ownership rights in any mortgage loan provided to its Member(s) by a secondary market vendor.  LORIMAC will refer a lender of its choice to perform services necessary to close such loan or provide such Special Product. The secondary market vendor will underwrite to their standards and price any such loan or Special Product as they see applicable. LORIMAC's choice of lender will not be required to write to any other secondary market standard other than its own.

## SECTION III

## LOAN SERVICING

a.     Immediately after each loan closes, Credit Union will be deemed to have assigned all mortgage servicing rights to such Loan to LORIMAC. LORIMAC may, in its sole discretion, transfer the ownership of such mortgage servicing rights to TISERV. TISERV may engage LORIMAC to sub-service any or all of such Loans. If servicing rights relating to any Loan(s) are transferred to TISERV, LORIMAC shall notify Credit Union, TISERV shall perform all of LORIMAC's servicing obligations under this Agreement, and Credit Union shall pay all servicing-related fees for such Loans to TISERV. IF LORIMAC ASSIGNS SERVICING RIGHTS FOR ANY LOANS TO TISERV, LORIMAC MAY RETAIN THE RIGHT TO SUB-SERVICE SUCH LOANS AT ITS DISCRETION. FOLLOWING ANY SUCH ASSIGNMENT, TISERV SHALL HAVE THE SAME RIGHTS AND OBLIGATIONS AS LORIMAC WITH RESPECT TO THE ASSIGNED SERVICING, AND EACH OF LORIMAC AND TISERV SHALL COMPLY WITH THE SERVICING REQUIREMENTS OF THIS AGREEMENT IN SERVICING OR SUB-SUBSERVING LOANS.

LORIMAC will set up each Loan for servicing promptly after it closes. LORIMAC shall diligently perform all duties that are necessary or incidental to the servicing of all Loans on behalf of Credit Union. In the performance of its servicing duties, LORIMAC shall comply with all applicable secondary market standards and applicable rules and regulations promulgated from time to time by the FNMA or FHLMC, or any other such secondary market vendor recognized by LORIMAC as setting industry standards for mortgage loan servicing. Where not inconsistent with applicable FMNA or FHLMC rules and regulations, LORIMAC will service the Loans as follows:

(i)    LORIMAC shall service the Loans in accordance with customary practices followed by prudent mortgage servicers in servicing their mortgage loans of the same type, or, if applicable, in accordance with Credit Union's written policies and procedure manual as provided to LORIMAC.

(ii)    LORIMAC shall remit to Credit Union all collected principal, interest, and principal prepayment collected which apply to the mortgage and note held by Credit Union, less LORIMAC's servicing fees. LORIMAC will be entitled to assess, collect and retain all applicable late fees, bounced check charges, over line account fees and any other applicable fees determined by LORIMAC and obtained in the course of servicing the Loans.

(iii)    LORIMAC's remittance to Credit Union of all collected principal, interest, and principal prepayment shall be by electronic funds transfer or by check sent on the twentieth (20th) calendar day of each month.

(iv)    LORIMAC shall keep full and complete records pertaining to each Loan, including collections made, and disbursements made for the distribution of principal, interest, principal prepayment or Loan payoffs. During the period of this Agreement, LORIMAC shall give Credit Union and its authorized representatives reasonable access to all books and records pertaining to the Loans.

b.    LORIMAC agrees to service each Loan continuously from the date such Loan closes or, if later, from the date the servicing rights are transferred to LORIMAC. LORIMAC's servicing responsibilities pursuant to this Agreement with respect to any Loan shall continue until the earliest to occur of the following:

(i)    All principal and interest on such Loan has been paid in full;

(ii)    Such Loan is liquidated and final disposition of any property acquired in foreclosure or by deed in lieu of foreclosure has occurred; or

(iii)    The servicing rights are sold or otherwise transferred in accordance with this Agreement, either as a result of a repurchase of such rights by Credit Union under Section III, paragraph 2, or following a sale or other transfer to any third party (not including a transfer of the servicing or sub-servicing rights as between LORIMAC and TISERV).

c.    Consideration Paid to LORIMAC to Provide Loan Servicing. For Loans serviced for Credit Union hereunder, Credit Union shall pay servicing fees in accordance with the following fee schedule. The current fees for fixed rate mortgages and for variable rate mortgages are Three Hundred Seventy-Five (.375) B.P. of the outstanding principal balance of the Credit Union's portfolio at the beginning of each month (Example: $100,000.00 x .375% = $375.00 divided by 12 = $31.25). The servicing fee is subject to change in upon sixty (60) days notice. The change in fees will apply only to Loans that are not being serviced by LORIMAC on the date such notice is sent. Fees for Loans that are being serviced by LORIMAC as of the date of the notice will not change.

The parties acknowledge that the mortgage servicing rights for the Loans have value. By assigning the servicing rights to LORIMAC for the consideration set forth herein, Credit Union acknowledges and understands that, subject to the Credit Union's repurchase right under Section III, paragraph 2 below, Credit Union surrenders all control over the servicing of these Loans. The parties acknowledge that the combination of the discounted Loan Production Services Fees and the free Associated Support Services provided are good and valuable consideration to Credit Union, and they constitute consideration at least equal in value to Credit

Union, as the value of the mortgage servicing rights transferred to LORIMAC under this Agreement.

2.   **The Credit Union's Right of First Refusal of Mortgage Servicing Rights**

If LORIMAC has obtained an offer by a third party to purchase the mortgage servicing rights, LORIMAC shall provide the Credit Union with written notice (the "Sale Notice") of said sale providing the name of the proposed third party purchaser, purchase price, and the other material terms and conditions of the proposal. Credit Union shall have an option to repurchase the servicing rights at the same price and on the same terms as those specified in the Sale Notice. Credit Union may exercise its option by notifying LORIMAC in writing (the Exercise Notice") within ten (10) days of its election to repurchase the servicing rights from LORIMAC and Credit Union shall be obligated to repurchase the servicing rights on the same terms and conditions provided in the Sale Notice. In the event Credit Union elects to repurchase said mortgage servicing rights, the closing of the repurchase and delivery of the consideration set forth in the Sale Notice shall occur within 30 days of the Exercise Notice.

If Credit Union does not provide timely written notice of its election to exercise its option to repurchase, such option shall be deemed waived and LORIMAC shall be entitled to proceed with its proposed sale of the servicing rights to the third party at any time within ninety (90) days after the termination of the ten (10) day notice period described above. Effective immediately upon said sale, this Agreement shall terminate with respect to the servicing rights sold, and neither LORIMAC nor said third party purchaser of the servicing rights shall have any obligation to Credit Union with respect to the servicing rights sold. If the sale to the third party does not close upon the same material terms as set forth in the notice to the Credit Union, the method of


servicing shall not be warranted by LORIMAC after a sale to the third party servicer. Any transfer of servicing or sub-servicing rights as between LORIMAC and TISERV are exempt from this Section II.

3.    Secondary Market Sale Services

If Credit Union desires to sell Loans it owns to the secondary market, LORIMAC will assist Credit Union with these sales. If LORIMAC is servicing the Loans sold to the secondary market, Credit Union recognizes that LORIMAC owns the mortgage servicing rights and any sale of the Loan: (i) must provide that LORIMAC will continue to service the mortgage Loans on the same standards as provided in this Agreement, and (ii) will automatically terminate the repurchase option provided in Section III, paragraph 2 as to Credit Union and the purchaser of the Loans(s).

## SECTION IV

## ASSOCIATED PROGRAM SERVICES

LORIMAC agrees to provide Associated Program Services to Credit Union without fee for Loans as partial consideration for transfer of Credit Union's mortgage servicing rights for these Loans. The Associated Program Services provided by LORIMAC are customized to meet Credit Union's requirements and will require additional resources of LORIMAC that are not customarily offered by other loan service providers.

a.    Set-up Services for Mortgage Program.   LORIMAC will provide the following services as are reasonable and customary to assist Credit Union in initiating the mortgage support services program for loans purchased by LORIMAC:

(i)     Financial analysis of the Credit Union records to recommend which mortgage programs best serve Members.

(ii)    Advice to Credit Union regarding risk factors and income/expense potential as it may pertain to mortgage products offered by Credit Union.

(iii)   Advice to as to which secondary market products best serve Members and Credit Union.

(iv)    Analysis and development of marketing materials to introduce mortgage products to Members.

(v)     Production of Credit Union's real estate specific application disclosure documents as they may pertain to the mortgage products offered by Credit Union to Members.

(vi)    Design and production of real estate services application kit, if requested by Credit Union. Development and production of the application kit or any other customized marketing material is unique and LORIMAC will bill Credit Union for such services at LORIMAC's regular rates.

(vii)   Assist Credit Union to heighten Member awareness of real estate financial services using specialized marketing materials.

(viii)  Consult with Credit Union on real estate rate structure and objectives.

(ix)    Design and produce a real estate services rate sheet based on financial goals and objectives of Credit Union.

(x)    Set up toll free number for Member usage.

(xi)    Counsel LORIMAC's staff on Credit Union background and expectations.

(xii)    Perform Credit Union staff training (if applicable).

(xiii)    Set-up Federal, State and NCUA reporting systems and controls.

(xiv)    Set-up credit reporting computer information.

(xv)    Set-up internal computer for extension of services to facilitate systems support processes through servicing.

(xvi)    Link LORIMAC support site to Credit Union web page.

(xvii)    As an optional service, LORIMAC will provide servicing information on Loans being serviced for the Credit Union in monthly reports, or electronic format or through an assigned web access.

b.    _Marketing._    Credit Union and LORIMAC each agree to market mortgage services to the Credit Union's entire membership by direct mail at least one time each per calendar year. The costs for the respective mailings shall be borne by the respective parties. LORIMAC will make available to the Credit Union its marketing services at a rate to be

determined by LORIMAC commensurate with Credit Union's choice of marketing media, supplies, design, and production and the extent of the agreed upon services. Credit Union and LORIMAC shall confer as to the eventual choice of marketing media and timeliness of marketing member services.

    c.   <u>Operational Consultation</u>. LORIMAC will provide on-going consultation and advice to the Credit Union on how to improve the Mortgage Loan Program.

    d.   <u>Cross-Sell of Mortgage Applicants</u>. LORIMAC shall, at the Credit Union's discretion, attempt to cross-sell other Credit Union financial services at the time the mortgage application is being processed by LORIMAC as it relates to financial products disclosed on the member's mortgage application. Brochures, newsletters, flyers and any other marketing material utilized to cross-sell Credit Union services shall be provided by the Credit Union to LORIMAC at Credit Union sole cost and expense. LORIMAC is not responsible to maintain a supply of Credit Union marketing materials but shall advise when additional materials are needed. LORIMAC shall not request or be entitled to any additional compensation for obtaining additional Credit Union accounts beyond the fees and expenses described in this Agreement.

    e.   <u>Transparency of Services</u>. LORIMAC will provide its services to Members in a manner that highlights the Credit Union's involvement and reduces LORIMAC's involvement in the eyes of the Members. During the loan production and Loan servicing process for Loans Credit Union elects to purchase, Credit Union's name should be used (unless regulations require otherwise) in contacts with the Member to enhance the connection with the Credit Union and Credit Union's image with the Member.

    f.    <u>Secondary Market Sales.</u>  LORIMAC shall not charge a fee to Credit Union for Loans sold into the secondary market.  LORIMAC shall be entitled to keep all premiums obtained from the secondary market investor on Loans sold by Credit Union through LORIMAC.

    g.    <u>Change in Fees.</u>  LORIMAC may change its fees for any services provided in this Agreement upon sixty (60) days written notice.

    **7.**    **Disclaimer.**  LORIMAC makes no representation or warranty to Credit Union or its Members as to the effect that this Agreement and the consummation of the transaction contemplated hereby may have upon the Credit Union's foreign, federal, state or local tax liabilities.

    **8.**    **Amendments; Joint and Several Obligations.**  The terms of this Agreement may not be voided, amended, altered or waived except by a written instrument signed by all parties.

    **9.**    **Limitation of Liability.**  The responsibility of LORIMAC (AND TISERV) hereunder shall consist solely of the duties and responsibilities described in this Agreement and such responsibility shall terminate upon closing of all mortgages or mortgage Loans serviced in accordance with the terms hereof.  Notwithstanding any provision contained herein to the contrary, LORIMAC shall not have any liability or responsibility to any person for anything done or omitted to be done hereunder, except as a result of is own gross negligence or willful misconduct.  In the event of gross negligence or willful misconduct on the part of TISERV and LORIMAC involving a particular Loan made by Credit Union, Credit Union may request in writing the purchase of such Loan by LORIMAC and LORIMAC shall purchase said Loan within 60 days of the date of delivery of said request.  Except as provided in the immediately preceding sentence, CREDIT UNION agrees that LORIMAC's total liability for any or all of CREDIT UNION's losses or injuries from LORIMAC's actions including the performance of the any and all services under this Agreement, regardless of the nature of the legal or equitable right claimed to have been violated, shall not exceed the amount paid by CREDIT UNION to

LORIMAC under this Agreement during the twelve month period preceding the alleged breach by LORIMAC of this Agreement. CREDIT UNION acknowledges and agrees that the fees and other consideration described in this Agreement do not include any consideration for the assumption by LORIMAC of the risk of CREDIT UNION's consequential or incidental damages that may arise from the use of the various services and products addressed by this Agreement. EXCEPT AS SET FORTH ABOVE, CREDIT UNION AGREES THAT LORIMAC SHALL NOT BE RESPONSIBLE TO CREDIT UNION (OR ANY CUSTOMER OR MEMBER OF CREDIT UNION) FOR ANY LOSS-OF-PROFIT, LOSS OF DATA, DOWN-TIME, INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO LORIMAC'S PERFORMANCE OR LACK THEREOF UNDER THIS AGREEMENT OR THE USE OF THE SERVICES PROVIDED UNDER THIS AGREEMENT, WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH CLAIM, DEMAND OR ACTION.

10.     **Term and Termination.** The term of this Agreement shall commence as of the day and year first set forth, and shall continue until terminated by either party upon at least ninety (90) days' prior written notice. At the effective termination date, Credit Union shall pay all fees and expenses due to LORIMAC, and the obligations of the one party to the other hereunder existing with respect to servicing rights assigned to LORIMAC prior to the at the termination shall survive the termination of this Agreement in accordance with Section III.

11.     **Notices.** All notices and other communications under this Agreement shall be in writing and shall be sent by certified mail, return receipt requested, or by overnight courier service, and deemed to have been duly submitted three business days after sending by certified mail; or one business day after sending by overnight courier, the respective party at the address set forth above, or at such other address as that party may specify to the other by written notice. Notices to LORIMAC (or TISERV) shall be addressed and sent to:

Dennis J. Fitzpatrick, Managing Director

LORIMAC CORPORATION

1000 Clifton Avenue

Clifton, NJ 07013


Notices to Credit Union shall be addressed and sent to:

Ms. Dee D. Murphy, President/CEO

POCATELLO RAILROAD FEDERAL CREDIT UNION

216 West Whitman

Pocatello, ID 83204


12.    **Governing Law.**  This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of California without reference to conflicts of law.

13.    **Application, Enforcement and Modification of this Agreement.**  If in any judicial proceeding a Court shall refuse to enforce all of the provisions of this Agreement, any unenforceable provision shall be deemed eliminated from the Agreement for the purpose of such proceeding as is necessary to permit the remainder of the Agreement to be enforced in such proceeding.  Credit Union understands and agrees that, subject to the repurchase option, LORIMAC has an unconditional right to assign, transfer, sell, hypothecate or otherwise dispose of its interest in the servicing rights it has acquired from Credit Union.  This agreement constitutes the entire understanding of the parties and supersedes any prior Agreement, written or oral, enforced between or among any of the parties hereto relating to the matters set forth herein. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against

the successors and permitted assigns of each party. This Agreement does not create a joint venture or partnership between the Credit Union LORIMAC (or TISERV). LORIMAC (and TISERV) and Credit Union shall maintain strict and total separation of their businesses from the businesses of the other, including separation of records, and shall conduct business at all times so as not to lead to confusion between LORIMAC's (or TISERV's) business and the business conducted by Credit Union.

14.    **Dispute Resolution.**  The parties agree that any controversy arising out of or relating to this Agreement or any breach thereof, shall be resolved by arbitration in accordance with the rules of the American Arbitration Association.  The arbitration hearing shall be conducted by a single arbitrator to be appointed by the American Arbitration Association and shall be conducted in San Francisco, California. The aggrieved party shall submit a notice to the other of its dispute and shall give proper and ample notice to the other of its interest in pursuing arbitration to settle said dispute.  The parties shall be jointly and equally responsible for the costs and expenses related to the arbitration or other alternative dispute resolution process selected by and agreed to by the parties.

15.    **Governmental Authorities; Laws and Severability.**  The terms and provisions of this Agreement are expressly made subject to applicable federal and state statutes, laws, and rules and regulations promulgated thereunder, as amended from time to time. Any rule, regulation or administrative policy (a "Rule") of any governmental agency having jurisdiction which relates to the transfer of the servicing rights hereunder shall be deemed to be incorporated herein, and shall supersede the terms of this Agreement, unless such incorporation shall materially impair the contemplated benefits to be received by the parties pursuant to this Agreement, in which event the parties shall renegotiate the terms and conditions hereof to

comply with said Rules(s) and to reflect a fair allocation of the economic benefits contemplated hereby.

16.    **Further Assurances.** Credit Union shall at any time and from time to time, upon the reasonable request of LORIMAC or its representatives, execute, acknowledge, deliver or perform all such further acts, deeds, assignments, transfer conveyances and assurances as may be required for the better vesting and/or confirming to LORIMAC and its successors and assigns, the title to the servicing rights assigned by this Agreement or as shall otherwise be necessary to effect the transactions provided for in this Agreement.

17.    **Assignability of Agreement.** The parties recognize and agree that LORIMAC (or TISERV), Inc., from time to time, may take the form of a different legal entity, whether partnership, corporation or limited liability company, etc. In the event LORIMAC (or TISERV) selects to change its corporate structure or ownership interest, LORIMAC (or TISERV) shall be entitled to assign this Agreement and its rights and obligations hereunder to the new entity provided said entity remains in control and ownership of substantially the same principals of TISERV and LORIMAC (or TISERV). The exercise of this provision by LORIMAC (or TISERV) shall not be undertaken to circumvent in any way its contractual obligations under this Agreement.

18. **Non-Exclusivity of Agreement.** The parties recognize and agree that the relationship between LORIMAC and CREDIT UNION is a non-exclusive one. Although the parties are bound to this Agreement involving the Loans serviced hereunder, Credit Union is not obligated to utilize only the services of LORIMAC but is entitled to transact with other entities of its choosing.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

ATTEST:                                          LORIMAC CORPORATION

By: _____

Dennis J. Fitzpatrick

Title: <u>Managing Director</u>


ATTEST:                                          TISERV, Incorporated

By: _____

Name: Dennis J. Fitzpatrick

Title: _____


ATTEST:                                          POCATELLO RAILROAD FCU

By: _____

Name: Ms. Dee D. Murphy

Title: President/CEO