1  JEFFER, MANGELS, BUTLER & MARMARO LLP
   ROBERT C. GEBHARDT (Bar No. 48965)
2  J.T. WELLS BLAXTER (Bar No. 190222)
   Two Embarcadero Center, Fifth Floor
3  San Francisco, California 94111-3824
   Telephone:   (415) 398-8080
4  Facsimile:   (415) 398-5584
   Email:       rgebhardt@jmbm.com
5               wblaxter@jmbm.com

6  Attorneys for Plaintiffs CESSNA EMPLOYEES CREDIT
   UNION, ADVANTAGE PLUS FEDERAL CREDIT UNION,
7  EAST IDAHO CREDIT UNION, HEALTH SERVICES CREDIT
   UNION, IDAHO FALLS TEACHERS CREDIT UNION, LES
8  BOIS FEDERAL CREDIT UNION, CLEARWATER CREDIT
   UNION, SCENIC FALLS FEDERAL CREDIT UNION, and
9  SIMCOE CREDIT UNION, ST. ALPHONSUS MEDICAL
   CREDIT UNION, POCATELLO RAILROAD FEDERAL
10 CREDIT UNION, RACOM COMMUNITY CREDIT UNION and
   TRANSIT EMPLOYEES FEDERAL CREDIT UNION

11

12                UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

| | |
|---|---|
| 15 CESSNA EMPLOYEES CREDIT UNION; a Kansas state chartered Credit union; ADVANTAGE PLUS FEDERAL CREDIT UNION, a Federally chartered Credit union; EAST IDAHO CREDIT UNION, an Idaho state chartered Credit union; HEALTH SERVICES CREDIT UNION; an Iowa state chartered Credit union; IDAHO FALLS TEACHERS CREDIT UNION, an Idaho state chartered Credit union; and LES BOIS FEDERAL CREDIT UNION; a Federally chartered Credit union; CLEARWATER CREDIT UNION, an Idaho state chartered Credit union; SCENIC FALLS FEDERAL CREDIT UNION, a Federally chartered Credit union; and SIMCOE CREDIT UNION, an Idaho state chartered Credit union, ST. ALPHONSUS MEDICAL CREDIT UNION, an Idaho state chartered Credit union; POCATELLO RAILROAD FEDERAL CREDIT UNION, a Federally chartered Credit union; RACOM COMMUNITY CREDIT UNION, an Iowa state chartered Credit union; and, TRANSIT EMPLOYEES FEDERAL CREDIT UNION, a Federally chartered Credit union, | CASE NO.   CV 07 5771<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO STAY ACTION PENDING COMPLETION OF FIRST-FILED STATE COURT PROCEEDING** |
| 28                  Plaintiffs, | |

PRINTED ON
RECYCLED PAPER

645060v1

v.

CUNA MUTUAL GROUP, a Wisconsin corporation and CUMIS INSURANCE SOCIETY, INC., a Wisconsin corporation,

Defendants.

## I. INTRODUCTION

Defendants' myopic motion should fail. Their simplistic analysis of diversity of citizenship fails to recognize that as corporations and insurers, they are governed by state laws which confer upon them duties designed to protect creditors and policyholders. Under those laws, the merger that apparently occurred between Wisconsin and Iowa insurance companies could not affect the rights of legitimate claimants like these thirteen Credit Unions.

These rights include Plaintiffs' right to proceed with this action in federal court based on diversity of citizenship. Plaintiffs' claims under the fidelity bonds issued by Defendants were pending when the Defendants were Wisconsin citizens; their subsequent merger or dissolution does not alter their states of residence as to those pending claims. In effect, the Defendants' states of incorporation and principal places of business were frozen in Wisconsin as to these Plaintiffs' pending claims.

## II. FACTUAL BACKGROUND

### A. The Underlying Insured Loss Giving Rise To This Action.

Plaintiffs are thirteen Credit Unions, each of which entered into a "Credit Union Support Services and Correspondent Mortgage Lending Agreement" (the "Servicing Agreement") with a San Francisco entity named LoriMac, Inc ("LoriMac") during the years 2003 and 2004. (See paragraph 2 of the Declaration of Robert C. Gebhardt in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Gebhardt Dec.").) Pursuant to the express terms of the Servicing Agreements, LoriMac agreed to perform services related to the initiation of mortgage loans to the Credit Union members. (Gebhardt Dec. at ¶ 3.) Thereafter, LoriMac was also authorized to, and in fact did service the residential mortgage loans made to Credit Union members by collecting all

principal, interest, principal prepayments and loan payoffs, keeping full and complete records pertaining to each loan, including collections and disbursements made for the distribution of principal, interest, principal prepayment or loan payoffs, and remitting payments collected, less servicing fees, to the Credit Unions. (Gebhardt Dec. at ¶ 3.) Finally, LoriMac agreed to and assisted each Credit Union in selling residential mortgage loans originated by the Credit Unions to the secondary market. (Gebhardt Dec. at ¶ 3.) After selling certain residential mortgage loans to the secondary market, LoriMac collected the proceeds of these sales and, instead of remitting the proceeds to the Credit Unions, LoriMac diverted, embezzled and otherwise misappropriated these sale proceeds to its own uses and that of its officers. (Gebhardt Dec. at ¶ 3.)

On January 8 and 12, 2007, twelve of the Credit Unions filed actions against LoriMac in the Northern District Court – San Francisco Division (Case Nos. C 07 –120 JEW and C 07 –244 CRB). (Gebhardt Dec. at ¶ 4.) Shortly after serving LoriMac with these complaints, on February 13, 2007, LoriMac declared bankruptcy under Chapter 7. (Gebhardt Dec. at ¶ 5.) On that same day, the Chief Executive Officer of LoriMac, Lorraine Legg, invoked her Fifth Amendment right against self-incrimination and refused to respond to questions posed by the bankruptcy trustee's lawyer. (Gebhardt Dec. at ¶ 5.) Within a few days of February 13 -- the first notice of criminal activity and losses associated with it -- the Credit Unions notified Cumis and CUNA of their losses and their claims under the fidelity bonds issued by CUNA Mutual Group and/or Cumis Insurance Society, Inc. (the "Bonds") to each of the thirteen Plaintiffs in this action. (Gebhardt Dec. at ¶ 6; See paragraph 3 and Exhibit "A" of the Declaration of J.T. Wells Blaxter in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Blaxter Dec."). Defendants immediately proceeded to investigate Plaintiffs' claims. (Gebhardt Dec. at ¶ 7.) This process included receiving notification of the claims and discussing same with Plaintiffs' counsel, provision by Plaintiffs of all background information requested by Defendants for purposes of evaluating Plaintiffs' claims, and submission by Plaintiffs' counsel of the legal bases for Plaintiffs' claims under the Bonds. (Gebhardt Dec. at ¶ 7, Exh. A and B.)

On or about June 14 and 15, 2007, pursuant to the express terms of the Bonds, the Credit Unions submitted their formal Proofs of Loss to Cumis and CUNA. (Gebhardt Dec. at ¶ 8,

- 3 -

Exh. C.) The formal Proofs of Loss detailed the amount of the loss suffered by each Credit Unions and the manner in which the loss occurred. (Gebhardt Dec. at ¶ 8; Exh. C.) The Bonds require Defendants to pay the Credit Unions' losses resulting directly from dishonest acts committed by "employees" -- as that term is defined in the Bonds. (Gebhardt Dec. at ¶ 9.) It is Plaintiffs' position LoriMac is an "employee."

### B. CUMIS and CUNA's Denial of Plaintiffs Claims

Plaintiffs complied with all notice requirements contained in the Bonds by providing timely notice of their losses to Cumis. (Gebhardt Dec. at ¶¶ 6, 8.) Within days of February 13, 2007, Cumis and CUNA began their investigatory proceedings of twelve of the Credit Unions' claims. (Gebhardt Dec. at ¶ 7.) Transit Employees Federal Credit Union did not notify CUNA and Cumis of its claim until March 21, 2007. (See paragraph 2 of the Declaration of Ori Katz filed in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Katz Dec.")); Gebhardt Dec. at ¶ 10.) On or about June 14 and 15, 2007, Plaintiffs submitted their formal Proofs of Loss to Cumis. (Gebhardt Dec. at ¶ 8.)

On July 31, 2007, Defendants denied coverage for the Credit Unions losses. (Gebhardt Dec. at ¶ 11; Exh. D.) Although the parties met once informally on August 14, 2007and participated in a mediation on November 12, 2007 before the Honorable Fern M. Smith, (Ret.) the parties have been unable to resolve this coverage dispute. (Gebhardt Dec. at ¶ 12.)

### C. The Wisconsin Action

Unbeknownst to Plaintiffs, one of the Defendant insurers, Cumis Insurance Society, Inc. ("Cumis") had filed a declaratory relief action in the Circuit Court of Dane County, Wisconsin on September 11, 2007. (Gebhardt Dec. at ¶ 13.) The original Wisconsin complaint was not served on any of the Credit Unions until November 14 and 15, 2007. (Gebhardt Dec. at ¶ 14.) The instant action was filed on November 14, 2007 -- two days after the abortive mediation. (Gebhardt Dec. at ¶ 15.) In its original Wisconsin complaint, Cumis avers at paragraph 2 that "Plaintiff Cumis is a Wisconsin Corporation with its principal place of business in Madison, Wisconsin." (See Exhibit 2 to the Declaration of David A. Ring in support of Defendants' Motion to Dismiss For Lack of Subject Matter Jurisdiction or, In the Alternative, To Stay this Action pending Completion of First

- 4 -

1  Filed State Court Proceedings (the "Ring Dec.").) The Credit Unions removed the Wisconsin
2  action to the United States District Court for the Western District of Wisconsin on December 4,
3  2007. (Gebhardt Dec. at ¶ 16.) Cumis has filed a motion to remand the Wisconsin action.
4  (Gebhardt Dec. at ¶ 17.) Cumis filed an amended complaint in Wisconsin on November 16, 2007,
5  which amended paragraph 2 of the Wisconsin complaint to allege that Cumis was an Iowa
6  corporation. (Ring Dec. at ¶ 3; Gebhardt Dec. at ¶ 18.) However, to date none of the Credit Unions
7  has been served with the amended complaint. (Gebhardt Dec. at ¶ 19.) Interestingly, even the
8  caption of Defendants' instant motion identifies Cumis Insurance Society, Inc. and CUNA Mtutual
9  Group as Wisconsin corporations.

**D.     The Alleged Redomestication of Cumis.**

According to paragraph 2 of the Declaration of Janice C. Doyle In Support of Defendants' Motion to Dismiss For Lack of Subject Matter Jurisdiction or, In The Alternative, to Stay Pending Completion of State Court Proceedings (the Doyle Dec."), "Cumis filed Restated Articles of Incorporation with the Secretary of State of the State of Iowa on May 3, 2007 in connection with its redomestication from the State of Wisconsin to the State of Iowa." The document was filed as a result of a merger of Cumis with an entity named Cumis Mutual Life Insurance Company (Blaxter Dec. at ¶3.) Exhibit 1 of the Doyle Dec. purports to be an "Acknowledgement of Document Filed" and the "Restated Articles of Incorporation of Cumis Insurance Society, Inc." Article II of the Restated Articles provides, in pertinent part, that "[a]ll of the contract rights of policyowners now holding contracts of insurance issued or assumed by the Company are and shall be retained."

**III.    LEGAL ANALYSIS**

**A.     The Court Has Subject Matter Jurisdiction of This Action Pursuant to 28 U.S.C. 1332.**

As the party invoking federal jurisdiction, plaintiff has the burden of proof. However, plaintiffs can survive a motion to dismiss a matter by showing any arguable basis in law for the claims made. *Farmilant v. Singapore Airlines, Ltd.,* 561 F. Supp. 1148, 1151 (N.D. Ill. 1983). On a threshold motion to dismiss for want of subject matter jurisdiction, plaintiffs are

1  "entitled to the speculative benefit of any facts they might conceivably prove in support of his well-
2  pleaded allegations." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1248 (6th cir.
3  1996).
4        As set forth below, Plaintiffs' have substantially more than an arguable basis in law
5  for the claims made in the complaint regarding subject matter jurisdiction.

      **1.    Cumis Continues To Exist As A Wisconsin Corporation For The Purposes of Plaintiffs' Pre-Merger Claims Against It.**

8        For the purposes of Plaintiffs' claims against Cumis, which were asserted in late-
9  February / early-March, 2007, – well before the May 3, 2007 redomestication to Iowa – Cumis
10 remains a Wisconsin corporation notwithstanding its merger with CUNA Mutual Life Insurance
11 Company and, consequently, this court has subject matter jurisdiction over this action. Where a
12 plaintiff has a claim pending against an insurer prior to that insurer's merger with an out-of-state
13 corporation, the insurer continues to exist as a corporation in the state in which it was incorporated
14 prior to the merger. *Central Nat'l Bank in Chicago v. Continental Cas. Co.,* 182 F.2d 407, 409 (7th
15 Cir. 1950).
16       The *Central Nat'l Bank* case involved a fidelity bond claim, just like the instant case.
17 Plaintiff was an Illinois corporation and filed its diversity action in federal court on December 29,
18 1948. Defendant entered a special appearance, alleging that its corporate existence had ended on
19 June 30, 1948, by reason of being merged into the Continental Casualty Company, an Illinois
20 corporation, and on that ground moved to dismiss the action based upon lack of diversity
21 jurisdiction. The district court granted defendant's motion to dismiss, however, the Seventh Circuit
22 reversed the district court's decision on grounds that plaintiff had given notice of the losses prior to
23 the merger with the Illinois corporation. This fact, when considered in the context of the Indiana
24 Insurance Code which provided that "any claim existing or action or proceeding pending by or
25 against any of such corporations may be prosecuted to judgment as if such merger or consolidation
26 had not taken place . . . ." was sufficient for the Seventh Circuit to reverse, holding that the district
27 court did indeed have federal jurisdiction based on diversity of citizenship. *Id.* at 408.
28       Here, Plaintiffs claims against Cumis (and CUNA) were asserted prior to its merger

and redomestication to the State of Iowa and, therefore, it is considered a Wisconsin corporation for the purposes of this action[1]. This fact -- when considered in the context of the applicable California statutues -- is sufficient to confer diversity jurisdiction in this action. California Insurance Code § 4094 provides that any merger or consolidation shall provide that the surviving corporation shall succeed to and assume all obligations and liabilities of the merged, consolidating, or transferring corporation " in the same manner as if incurred or contracted by the surviving, consolidated or continuing corporation." In addition, California Corp. Code § 8020 (b)provides:

> All right of creditors and all liens and trusts upon or arising from the property of each of the constituent corporations and other parties to the merger *shall be preserved unimpaired*, . . . (emphasis added)

Like the Indiana Insurance Code section which the Seventh Circuit found dispositive in the *Central Nat'l. Bank* case, the California statutes also recognize the continued existence of claims and pre-merger rights of parties -- notwithstanding a formal subsequent change in the structure of a post-merger corporation. Any pre-merger claim or proceeding by or against a company that is merged into another is unaffected by any subsequent corporate merger activity. The Wisconsin Insurance and Corporations Codes also recognize the continued existence of claims and the pre-merger rights of parties. Section 611.223(3) of the Wisconsin Insurance Code provides:

> **Effect on existing contracts.** The transfer of an insurer's place of domicile under sub. (1) or (2) does not affect the obligations of the insurer under its existing contracts or any other existing contracts.

Similarly, Section 181.1106 of the Wisconsin Corporations Code provides:

When a merger takes effect all of the following occur:

 . . . .

> **(4) Pending Proceedings**. A civil, criminal, administrative, or *investigatory proceeding* by or against any business entity that is a party to the merger may be continued *as if the merger did not occur*, or the surviving business entity may be substituted in the proceeding for the business entity whose existence ceased. (emphasis added.)

---

[1] It is understood CUNA was dissolved in connection with the merger activities that caused CUMIS to be merged into an Iowa corporation. (See Ring Dec., Exh. 4) For purposes of this analysis, however, CUNA continues to exist for purposes of resolving any claims that may have existed prior to its dissolution.

It is clear that Wisconsin, Indiana and California all recognize the importance and continued validity of the existing rights of policyholders like those of Plaintiffs here when insurers merge, consolidate or otherwise transform themselves for their benefit.  Most likely, the laws of Wisconsin should apply to the instant matter, since by its laws these insurance companies were allowed to merge or dissolve.  However, due to the similarities of these states laws the result is the same, regardless of which states' law applies.  The holding of the *Central Nat'l. Bank* and its reliance on an Indiana Insurance Code, which is congruent with the both the California Insurance and Corporations Codes and the Wisconsin Corporations and Insurance Codes, provide more than a substantial basis in law to support the existence of diversity jurisdiction in this case.  Defendants' Motion to Dismiss this action for lack of diversity jurisdiction should be denied.

### 2. **Cumis' Restated Articles of Incorporation Provide Assurances That The Pre-Merger Contract Rights of Policyholders Will Not Be Abrogated.**

Cumis' Restated Articles of Incorporation expressly provide that all of the contract rights of the policyholders, of which Plaintiffs were several, shall not be abrogated, but shall be retained.  In the *Central Nat'l Bank* case, the Seventh Circuit not only relied upon the Indiana Insurance Code to support its holding that diversity jurisdiction existed, but also relied upon the fact that the Articles of Merger between the Illinois and Indiana corporations, like the Indiana Insurance Code, recognized the continued and unimpaired rights of policyholders which had been asserted pre-merger. Language similar to that found in the *Central Nat'l Bank* case is present here in Cumis' Articles of Incorporation, which provides:

> All of the contract rights of policyowners now holding contracts of insurance issued or assumed by the Company are and shall be retained.

In fact, prior to its merger, Cumis made assurances to its policyholders that their rights under the policies would be unaffected by the merger. In Cumis' "Frequently Asked Questions – CMLIC Merger Proposal," Cumis stated on its company website:

> **Q:    What will happen to my insurance policy of the merger occurs?**
>
> A:    Nothing.  The terms and provisions of your policy will remain the same as they are today.  Your rights under your policy and the

        premiums you pay also will remain the same.

        . . . .

        **Q:**     **Why isn't CMLIC the surviving corporation?**

        A:     Either could survive – it should make little difference to policyholders which company survives. With [Cumis] as the surviving entity, fewer licenses will have to be replaced in the surviving corporation.

(Blaxter Dec. at ¶ 4; Exhibit "C.")

Defendants, by this motion, and in contravention of the express provisions of the applicable statutes and Defendants' stated intent to preserve all policyowners rights, now seek to abrogate Plaintiffs' contract rights as policyholders by arguing that there is no jurisdiction over this action because Cumis redomesticated itself into an Iowa corporation while plaintiffs claims were pending against it and while it was investigating those claims. Defendants' motion to dismiss should therefore be denied.

### 3.     **Plaintiffs' Claims of Priority and Forum Shopping Are Not Well Taken.**

Plaintiffs agree that in normal instances, deference is accorded plaintiff's choice of forum. However, in the case of a declaratory relief action that principle has far less force. Courts should "exercise wariness at the prospect of a suit for declaratory judgment aimed solely at wrestling the choice of forum from the . . . plaintiff." *Hyatt Int'l. Corp. v. Coco,* 302 F.3d 707, 718 (7th Cir. 2002).

Defendants filed their Wisconsin complaint, which consists solely of a claim for declaratory relief under the Bonds, on September 11, 2007, but they did not serve it on any Credit Union until November 14, 2007. Plaintiffs, on the other hand, did not initiate this action until after the mediation before Judge Smith had concluded on November 14, 2007.

The case of *NSI Corp. vs. Showco, Inc.*, 843 F. Supp. 642 (D. Ore. 1994) is instructive. There, the parties were involved in settlement discussions over a trademark infringement claim. During the discussions, one party filed a declaratory relief action in Oregon. The action was not served until much later, after settlement discussions had ended. Thus, the factual background of the case has marked similarities to this one.

- 9 -

645060v1

Opposition to Motion to Dismiss
Case No. CV 07 5771 JSW

The declaratory judgment action brought in Oregon was dismissed by the district court, which held that the use of the declaratory judgment proceeding to obtain an unfair advantage of a choice of forum is grounds for dismissal. In this case, Defendants claim some priority by having filed their Wisconsin declaratory relief action first; Defendants are subject to the same criticism that was leveled against plaintiff in the *NSI* case.

As the court stated in *Associated Mills, Inc. vs. Regina Co.*, 675 F. Supp. 446, 448 (N.D. Ill. 1987), in refusing to recognize an attempt by a plaintiff in a declaratory judgment action to engage in forum shopping:

> . . . AMI's conduct in filing this declaratory judgment action amounted to nothing more than a preemptive strike. AMI should not be rewarded for winning the race to the courthouse. Nor should it be permitted to distort the purpose of a declaratory judgment by using it as a vehicle to secure a forum of its own choosing.

Contrary to Defendants' claims, Plaintiffs has not engaged in forum shopping. Indeed, San Francisco is where the dishonest acts giving rise to coverage under the Bonds occurred, where most of the evidence of those losses is located, and where many of the witnesses to the Credit Unions' losses live. All of this has not prevented Defendants from accusing the Plaintiffs of forum shopping -- a claim made even more puzzling by virtue of the fact that Defendants claim Wisconsin is the proper venue for this dispute when they have just finished redomesticating themselves to Iowa.

Defendants' motion alternatively seeks that this action be stayed. Plaintiffs are willing to stay this San Francisco federal action pending resolution of the motion to remand, which is currently before the District Court in the Eastern District of Wisconsin.

Plaintiffs fully expect that the Wisconsin motion to remand will be denied. If this court proceeds to deny the instant motion to dismiss, then there will be two cases pending in two federal courts involving the same issues.[2] At that point, the parties should meet and confer in an

---

[2] Although the original Wisconsin complaint stated a claim for declaratory relief under the

- 10 -

attempt to agree upon the proper venue for resolution of these cases. If no agreement can be reached, the doctrine of federal comity will apply, permitting a federal district court to decline to exercise jurisdiction over a matter if a complaint is filed in another federal district court. *Church of Scientology vs. United States*, 611 F.2d. 738, 749 (9th Cir. 1979). A formal application of this doctrine would be sought if the parties cannot agree on the federal forum where this controversy will be tried.

**B.     Colorado River Analysis Does Not Apply Here.**

Defendants' analysis under the *Colorado River* doctrine is premature as there is no concurrent state court action pending. In the interests of "wise judicial administration," federal courts may stay a case involving a question of federal law where a concurrent state action is pending in which the identical issues are raised. *Colorado River Water Conservation Dist. V. Unites States*, 424 U.S. 800, 815 (1976). However, the Credit Unions removed the Wisconsin state court complaint on December 4, 2007 and, consequently, there is no concurrent state court action pending at this time. As discussed above, Plaintiffs are willing to stay this action pending adjudication of the motion to remand currently pending in the District Court in the Eastern District of Wisconsin. If the Wisconsin action is remanded, a *Colorado River* analysis may become applicable to this action.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Or, In The Alternative, To Stay This Action Pending Completion Of First-Filed State Court Proceeding should be denied.

DATED: December 21, 2007        JEFFER, MANGELS, BUTLER & MARMARO LLP


By:     */s/ J.T. Wells Blaxter*
           ROBERT C. GEBHARDT
           J.T. WELLS BLAXTER
       Attorneys for Plaintiff Credit Unions

Bonds, the basis ascribed to the Credit Unions was incomplete and misleading. The full extent of the claim is set forth in the Credit Unions' Counterclaim.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PRINTED ON
RECYCLED PAPER

645060v1

- 12 -

Opposition to Motion to Dismiss
Case No. CV 07 5771 JSW