1   JEFFER, MANGELS, BUTLER & MARMARO LLP
    ROBERT C. GEBHARDT (Bar No. 48965)
2   J.T. WELLS BLAXTER (Bar No. 190222)
    Two Embarcadero Center, Fifth Floor
3   San Francisco, California  94111-3824
    Telephone:     (415) 398-8080
4   Facsimile:     (415) 398-5584
    Email:         rgebhardt@jmbm.com
5                  wblaxter@jmbm.com

6   Attorneys for Plaintiffs CESSNA EMPLOYEES CREDIT
    UNION, ADVANTAGE PLUS FEDERAL CREDIT UNION,
7   EAST IDAHO CREDIT UNION, HEALTH SERVICES CREDIT
    UNION, IDAHO FALLS TEACHERS CREDIT UNION, LES
8   BOIS FEDERAL CREDIT UNION, CLEARWATER CREDIT
    UNION, SCENIC FALLS FEDERAL CREDIT UNION, and
9   SIMCOE CREDIT UNION, ST. ALPHONSUS MEDICAL
    CREDIT UNION, POCATELLO RAILROAD FEDERAL
10  CREDIT UNION, RACOM COMMUNITY CREDIT UNION and
    TRANSIT EMPLOYEES FEDERAL CREDIT UNION

11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15  CESSNA EMPLOYEES CREDIT UNION; a        CASE NO.     CV 07 5771
    Kansas state chartered credit union;
16  ADVANTAGE PLUS FEDERAL CREDIT
    UNION, a Federally chartered credit union;
17  EAST IDAHO CREDIT UNION, an Idaho state
    chartered credit union; HEALTH SERVICES   DECLARATION OF J.T. WELLS
18  CREDIT UNION; an Iowa state chartered credit   BLAXTER IN SUPPORT OF PLAINTIFFS'
    union; IDAHO FALLS TEACHERS CREDIT        OPPOSITION TO DEFENDANTS'
19  UNION, an Idaho state chartered credit union;   MOTION TO DISMISS FOR LACK OF
    and LES BOIS FEDERAL CREDIT UNION; a      SUBJECT MATTER JURISDICTION OR,
20  Federally chartered credit union;            IN THE ALTERNATIVE, TO STAY
    CLEARWATER CREDIT UNION, an Idaho        ACTION PENDING COMPLETION OF
21  state chartered credit union; SCENIC FALLS   FIRST-FILED STATE COURT
    FEDERAL CREDIT UNION, a Federally         PROCEEDING
22  chartered credit union; and SIMCOE CREDIT
    UNION, an Idaho state chartered credit union,
23  ST. ALPHONSUS MEDICAL CREDIT
    UNION, an Idaho state chartered credit union;
24  POCATELLO RAILROAD FEDERAL
    CREDIT UNION, a Federally chartered credit
25  union; RACOM COMMUNITY CREDIT
    UNION, an Iowa state chartered credit union;
26  and, TRANSIT EMPLOYEES FEDERAL
    CREDIT UNION, a Federally chartered credit
27  union,

28                  Plaintiffs,

JMBM  Jeffer Mangels
      Butler & Marmaro LLP

v.

CUNA MUTUAL GROUP, a Wisconsin
corporation and CUMIS INSURANCE
SOCIETY, INC., a Wisconsin corporation,

Defendants.

I, J.T. WELLS BLAXTER, declare:

1.      I am an attorney at law duly licensed to practice law before this Court.  I am one of the attorneys of record for the thirteen Plaintiff Credit Unions.  I make this Declaration in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss, or in the alternative, to stay this action.  Unless stated on information and belief, I have personal knowledge of the facts set forth herein and if called as a witness herein could and would competently testify of the matters set forth below.

2.      Attached hereto as Exhibit "A" are a true and correct copies of my March 1, 2007 letters sent to Cumis Insurance Society in which I gave written notice of the Credit Unions' losses and claims under the CUNA/Cumis fidelity bonds.

3.      Attached hereto as Exhibit "B" is a true and correct copy of the CUNA Mutual Group/Cumis Insurance Society, Inc. website discussing the CMLIC Merger Proposal. (http://www.cunamutual.com/cmg/freeFormDetail/0,1248,17580,00.html)

4.      Attached hereto as Exhibit "C" is a true and correct copy of the "Frequently Asked Questions – CMLIC Merger Proposal" from the CUNA Mutual Group/Cumis Insurance Society, Inc. website.  (http://www.cunamutual.com/cmg/media/00016283.pdf)

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

Executed this _____21ˢᵗ_____ day of December 2007 at San Francisco, California.

J.T. WELLS BLAXTER

# EXHIBIT A

# JMBM | Jeffer Mangels
Butler & Marmaro LLP

J. T. Wells Blaxter
WBlaxter@jmbm.com

Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3824
(415) 398-8080    (415) 398-5584 Fax
www.jmbm.com

March 12, 2007

**VIA FEDERAL EXPRESS**

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI 55701-0391

Re:    Advantage Plus Federal Credit Union –
Notice of Discovery of Loss - Bond Number 037900-16

To Whom It May Concern:

We represent Advanatge Plus Federal Credit Union ("Advantage") in an action filed in the United States District Court – Northern District of California on behalf of Advantage and five other credit unions against Lori Mac, Inc. The action is styled as *Cessna Employees Credit Union, et al. v. Lori Mac, Inc.*, Case No. C 07-0120. This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 037900-16 (the "Bond") and serves as Advantage's Notice of Discovery of Loss under that paragraph.

On January 8, 2006, Advantage along with six other credit unions, filed an action against Lori Mac, Inc. The allegations in the complaint (a copy of which is enclosed herewith) set forth the facts giving rise to Advantage's claims against Lori Mac. In short, Lori Mac, Inc., the entity charged with servicing and/or selling in the secondary mortgage loan market loans originated by Advantage caused Advantage to suffer losses of approximately $448,000.00.

On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc. Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint. This date -- February 13, 2007 -- is the date on which Advantage first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred. The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

# EXHIBIT A

CUMIS Insurance Society, Inc.
March 12, 2007
Page 2


       This letter is to serve as notice to you of Advantage's claim. Advantage Plus Federal Credit Union hereby claims entitlement to all rights under the above-referenced bond. Please contact us to discuss the handling of this matter.



                 Very truly yours,


J. T. WELLS BLAXTER for
Jeffer, Mangels, Butler & Marmaro LLP

:jtb
Enclosure

JMBM | Jeffer Mangels
Butler & Marmaro LLP



# JMBM | Jeffer Mangels Butler & Marmaro LLP

J. T. Wells Blaxter
WBlaxter@jmbm.com

Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3824
(415) 398-8080    (415) 398-5584 Fax
www.jmbm.com

March 1, 2007

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI 55701-0391

> Re:    Cessna Employees Credit Union –
> Notice of Discovery of Loss – Policy # 015-0298-9; Bond # 032339-14

To Whom It May Concern:

We represent Cessna Employees Credit Union ("Cessna") in an action filed in the United States District Court – Northern District of California on behalf of Cessna and five other credit unions against Lori Mac, Inc. The action is styled as *Cessna Employees Credit Union, et al. v. Lori Mac, Inc.*, Case No. C 07-0120. This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 032339-14 (the "Bond") and serves as Cessna's Notice of Discovery of Loss under that paragraph.

On January 8, 2006, Cessna along with five other credit unions, filed an action against Lori Mac, Inc. The allegations in the complaint (a copy of which is enclosed herewith) set forth the facts giving rise to Cessna 's claims against Lori Mac. In short, Lori Mac, Inc., the entity charged with servicing and/or selling in the secondary mortgage loan market loans originated by Cessna caused Cessna to suffer losses of approximately $595,080.00.

On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc. Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint. This date -- February 13, 2007 -- is the date on which Cessna first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred. The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

CUMIS Insurance Society, Inc.
March 1, 2007
Page 2


This letter is to serve as notice to you of Cessna's claim. Cessna Employees Credit Union hereby claims entitlement to all rights under the above-referenced bond. Please contact us to discuss the handling of this matter.



Very truly yours,


J. T. WELLS BLAXTER for
Jeffer, Mangels, Butler & Marmaro LLP


:jtb
Enclosure

JMBM | Jeffer Mangels
Butler & Marmaro LLP



**JMBM** | Jeffer Mangels
Butler & Marmaro LLP _____

J. T. Wells Blaxter                                    Two Embarcadero Center, 5th Floor
WBlaxter@jmbm.com                                      San Francisco, California 94111-3824
                                                       (415) 398-8080    (415) 398-5584 Fax
                                                       www.jmbm.com

March 1, 2007

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI 55701-0391

Re:    Clearwater Credit Union –
       Notice of Discovery of Loss - Bond Number 037925-10

To Whom It May Concern:

    We represent Clearwater Credit Union ("Clearwater") in an action filed in the United States District Court -- Northern District of California on behalf of Clearwater and two other credit unions against Lori Mac, Inc. The action is styled as *Clearwater Credit Union, et al. v. Lori Mac, Inc.*, Case No. C 07-0244. This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 037925-10 (the "Bond") and serves as Clearwater's Notice of Discovery of Loss under that paragraph.

    On January 12, 2006, Clearwater along with two other credit unions, filed an action against Lori Mac, Inc. The allegations in the complaint (a copy of which is enclosed herewith) set forth the facts giving rise to Clearwater's claims against Lori Mac. In short, Lori Mac, Inc., the entity charged with servicing and/or selling in the secondary mortgage loan market loans originated by Clearwater caused Clearwater to suffer losses of approximately $89,000.00

    On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc. Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint. This date -- February 13, 2007 -- is the date on which Clearwater first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred. The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

CUMIS Insurance Society, Inc.
March 1, 2007
Page 2


      This letter is to serve as notice to you of Clearwater's claim.  Clearwater Credit Union hereby claims entitlement to all rights under the above-referenced bond.  Please contact us to discuss the handling of this matter.



          Very truly yours,


          J. T. WELLS BLAXTER for
          Jeffer, Mangels, Butler & Marmaro LLP


:jtb
Enclosure

JMBM | Jeffer Mangels
        | Butler & Marmaro LLP



| | |
|---|---|
| J. T. Wells Blaxter<br>WBlaxter@jmbm.com | Two Embarcadero Center, 5th Floor<br>San Francisco, California 94111-3824<br>(415) 398-8080   (415) 398-5584 Fax<br>www.jmbm.com |

March 1, 2007

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI 55701-0391

> Re:    East Idaho Credit Union –
>        Notice of Discovery of Loss - Bond Number 037882-14

To Whom It May Concern:

We represent East Idaho Credit Union ("EICU") in an action filed in the United States District Court – Northern District of California on behalf of EICU and five other credit unions against Lori Mac, Inc. The action is styled as *Cessna Employees Credit Union, et al. v. Lori Mac, Inc.*, Case No. C 07-0120. This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 037882-14 (the "Bond") and serves as EICU' Notice of Discovery of Loss under that paragraph.

On January 8, 2006, EICU along with five other credit unions, filed an action against Lori Mac, Inc. The allegations in the complaint (a copy of which is enclosed herewith) set forth the facts giving rise to EICU's claims against Lori Mac. In short, Lori Mac, Inc., the entity charged with servicing and/or selling in the secondary mortgage loan market loans originated by EICU caused EICU to suffer losses of approximately $266,200.00.

On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc. Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint. This date -- February 13, 2007 -- is the date on which EICU first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred. The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

CUMIS Insurance Society, Inc.
March 1, 2007
Page 2

This letter is to serve as notice to you of EICU's claim. East Idaho Credit Union hereby claims entitlement to all rights under the above-referenced bond. Please contact us to discuss the handling of this matter.

Very truly yours,

J. T. WELLS BLAXTER for
Jeffer, Mangels, Butler & Marmaro LLP

:jtb
Enclosure

JMBM | Jeffer Mangels
Butler & Marmaro LLP

557594v1



# JMBM | Jeffer Mangels Butler & Marmaro LLP

J. T. Wells Blaxter
WBlaxter@jmbm.com

Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3824
(415) 398-8080    (415) 398-5584 Fax
www.jmbm.com

March 1, 2007

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI 55701-0391

Re:    Health Services Credit Union –
       Notice of Discovery of Loss - Bond Number 032216-10

To Whom It May Concern:

We represent Health Services Credit Union ("HSCU") in an action filed in the United States District Court – Northern District of California on behalf of HSCU and five other credit unions against Lori Mac, Inc. The action is styled as *Cessna Employees Credit Union, et al. v. Lori Mac, Inc.*, Case No. C 07-0120. This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 032216-10 (the "Bond") and serves as HSCU's Notice of Discovery of Loss under that paragraph.

On January 8, 2006, HSCU along with five other credit unions, filed an action against Lori Mac, Inc. The allegations in the complaint (a copy of which is enclosed herewith) set forth the facts giving rise to HSCU's claims against Lori Mac. In short, Lori Mac, Inc., the entity charged with servicing and/or selling in the secondary mortgage loan market loans originated by HSCU caused HSCU to suffer losses of approximately $812,720.00.

On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc. Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint. This date -- February 13, 2007 -- is the date on which HSCU first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred. The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

CUMIS Insurance Society, Inc.
March 1, 2007
Page 2


      This letter is to serve as notice to you of HSCU's claim.  Health Services Credit Union hereby claims entitlement to all rights under the above-referenced bond.  Please contact us to discuss the handling of this matter.


        Very truly yours,


        J. T. WELLS BLAXTER for
        Jeffer, Mangels, Butler & Marmaro LLP


:jtb
Enclosure



# JMBM | Jeffer Mangels
| Butler & Marmaro LLP

J. T. Wells Blaxter
WBlaxter@jmbm.com

Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3824
(415) 398-8080    (415) 398-5584 Fax
www.jmbm.com

March 1, 2007

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI  55701-0391

Re:    Idaho Falls Teachers Credit Union –
Notice of Discovery of Loss - Bond Number 037907-10

To Whom It May Concern:

We represent Idaho Falls Teachers Credit Union ("IFTCU") in an action filed in the United States District Court – Northern District of California on behalf of IFTCU and two other credit unions against Lori Mac, Inc.  The action is styled as *Cessna Employees Credit Union, et al. v. Lori Mac, Inc.*, Case No. C 07-0120.  This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 037907-10 (the "Bond") and serves as IFTCU's Notice of Discovery of Loss under that paragraph.

On January 8, 2006, IFTCU along with six other credit unions, filed an action against Lori Mac, Inc.  The allegations in the complaint (a copy of which is enclosed herewith) set forth the facts giving rise to IFTCU's claims against Lori Mac.  In short, Lori Mac, Inc., the entity charged with servicing and/or selling in the secondary mortgage loan market loans originated by IFTCU caused IFTCU to suffer losses of approximately $189,200.00.

On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc.  Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint.  This date -- February 13, 2007 -- is the date on which IFTCU first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred.  The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

CUMIS Insurance Society, Inc.
March 1, 2007
Page 2

      This letter is to serve as notice to you of IFTCU's claim. Idaho Falls Teachers Credit Union hereby claims entitlement to all rights under the above-referenced bond. Please contact us to discuss the handling of this matter.

Very truly yours,

J. T. WELLS BLAXTER for
Jeffer, Mangels, Butler & Marmaro LLP

:jtb
Enclosure



JMBM | Jeffer Mangels
       | Butler & Marmaro LLP

J. T. Wells Blaxter
WBlaxter@jmbm.com

Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3824
(415) 398-8080    (415) 398-5584 Fax
www.jmbm.com

March 1, 2007

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI 55701-0391

      Re:     Les Bois Federal Credit Union –
              Notice of Discovery of Loss - Bond Number 037911-13

To Whom It May Concern:

      We represent Les Bois Federal Credit Union ("Les Bois") in an action filed in the United States District Court – Northern District of California on behalf of Les Bois and five other credit unions against Lori Mac, Inc. The action is styled as *Cessna Employees Credit Union, et al. v. Lori Mac, Inc.*, Case No. C 07-0120. This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 037911-13 (the "Bond") and serves as Les Bois' Notice of Discovery of Loss under that paragraph.

      On January 8, 2006, Les Bois along with five other credit unions, filed an action against Lori Mac, Inc. The allegations in the complaint (a copy of which is enclosed herewith) set forth the facts giving rise to Les Bois' claims against Lori Mac. In short, Lori Mac, Inc., the entity charged with servicing and/or selling in the secondary mortgage loan market loans originated by Les Bois caused Les Bois to suffer losses of approximately $448,000.00.

      On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc. Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint. This date -- February 13, 2007 -- is the date on which Les Bois first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred. The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

CUMIS Insurance Society, Inc.
March 1, 2007
Page 2


This letter is to serve as notice to you of Les Bois' claim. Les Bois Federal Credit Union hereby claims entitlement to all rights under the above-referenced bond. Please contact us to discuss the handling of this matter.



Very truly yours,

J. T. WELLS BLAXTER for
Jeffer, Mangels, Butler & Marmaro LLP


:jtb
Enclosure



**JMBM** | Jeffer Mangels
         | Butler & Marmaro LLP _____

J. T. Wells Blaxter                          Two Embarcadero Center, 5th Floor
WBlaxter@jmbm.com                            San Francisco, California 94111-3824
                                             (415) 398-8080    (415) 398-5584 Fax
                                             www.jmbm.com

March 1, 2007

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI 55701-0391

     Re:    St. Alphonsus Medical Credit Union –
             <u>Notice of Discovery of Loss - Bond Number 037930-13</u>

To Whom It May Concern:

      We have been engaged to represent St. Alphonsus Medical Credit Union. This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 037930-13 (the "Bond") and serves as St. Alphonsus' Notice of Discovery of Loss under that paragraph.

      In short, the basis of St. Alphonsus's claim is that Lori Mac, Inc., the entity charged with servicing and/or selling its secondary mortgage loan market loans originated by St. Alphonsus failed to do so causing and refused to account for the status of the loans originated by St. Alphonsus. As a result St. Alphonsus suffered losses of approximately $68,000.00.

      On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc. Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint. This date -- February 13, 2007 -- is the date on which St. Alphonsus first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred. The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

CUMIS Insurance Society, Inc.
March 1, 2007
Page 2

This letter is to serve as notice to you of St. Alphonsus' claim. St. Alphonsus Medical Credit Union hereby claims entitlement to all rights under the above-referenced bond. Please contact us to discuss the handling of this matter.

Very truly yours,

J. T. WELLS BLAXTER for
Jeffer, Mangels, Butler & Marmaro LLP

:jtb
Enclosure

557593v1



# JMBM | Jeffer Mangels
Butler & Marmaro LLP

J. T. Wells Blaxter
WBlaxter@jmbm.com

Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3824
(415) 398-8080    (415) 398-5584 Fax
www.jmbm.com

March 1, 2007

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI  55701-0391

Re:    Scenic Falls Federal Credit Union –
       Notice of Discovery of Loss - Bond Number 037939-17

To Whom It May Concern:

We represent Scenic Falls Federal Credit Union ("SFFCU") in an action filed in the United States District Court – Northern District of California on behalf of SFFCU and two other credit unions against Lori Mac, Inc.  The action is styled as *Clearwater Credit Union, et al. v. Lori Mac, Inc.*, Case No. C 07-0244.  This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 037939-17 (the "Bond") and serves as SFFCU's Notice of Discovery of Loss under that paragraph.

On January 12, 2006, SFFCU along with two other credit unions, filed an action against Lori Mac, Inc. The allegations in the complaint (a copy of which is enclosed herewith) set forth the facts giving rise to SFFCU's claims against Lori Mac.  In short, Lori Mac, Inc., the entity charged with servicing and/or selling in the secondary mortgage loan market loans originated by SFFCU caused SFFCU to suffer losses of approximately $249,000.00.

On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc.  Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint.  This date -- February 13, 2007 -- is the date on which SFFCU first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred.  The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

CUMIS Insurance Society, Inc.
March 1, 2007
Page 2

       This letter is to serve as notice to you of SFFCU's claim.  Scenic Falls Federal Credit Union hereby claims entitlement to all rights under the above-referenced bond.  Please contact us to discuss the handling of this matter.

                Very truly yours,

                J. T. WELLS BLAXTER for
                Jeffer, Mangels, Butler & Marmaro LLP

:jtb
Enclosure



**JMBM** | Jeffer Mangels
Butler & Marmaro LLP

J. T. Wells Blaxter
WBlaxter@jmbm.com

Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3824
(415) 398-8080    (415) 398-5584 Fax
www.jmbm.com

March 1, 2007

CUMIS Insurance Society, Inc.
P.O. Box 391
5910 Mineral Point Road
Madison, WI 55701-0391

Re:    Simcoe Credit Union –
Notice of Discovery of Loss - Bond Number 037937-13

To Whom It May Concern:

We represent Simcoe Credit Union ("Simcoe") in an action filed in the United States District Court – Northern District of California on behalf of Simcoe and two other credit unions against Lori Mac, Inc. The action is styled as *Clearwater Credit Union, et al. v. Lori Mac, Inc.*, Case No. C 07-0244. This letter is sent pursuant to paragraph 11 of the Conditions of Bond Number 037937-13 (the "Bond") and serves as Simcoe's Notice of Discovery of Loss under that paragraph.

On January 12, 2006, Simcoe along with two other credit unions, filed an action against Lori Mac, Inc. The allegations in the complaint (a copy of which is enclosed herewith) set forth the facts giving rise to Simcoe's claims against Lori Mac. In short, Lori Mac, Inc., the entity charged with servicing and/or selling in the secondary mortgage loan market loans originated by Simcoe caused Simcoe to suffer losses of approximately $80,500.00

On February 13, 2007, Lori Mac, Inc. filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Title 11, United States Code) in the Northern District of California. Later that same day, the Bankruptcy Trustee, E. Lynn Schoenmann traveled to the offices of Lori Mac, Inc. with the express purpose of meeting with Lorraine Legg, the Chief Executive Officer of Lori Mac, Inc. Pursuant to advice of her criminal defense attorney, Ms. Legg invoked her Fifth Amendment right against self-incrimination and refused to answer questions related to matters raised in the attached complaint. This date -- February 13, 2007 -- is the date on which Simcoe first became aware that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred. The exact amount and details of the loss, including accrued interest will be supplied in the subsequent notice required by paragraph 12 of the Conditions.

CUMIS Insurance Society, Inc.
March 1, 2007
Page 2


       This letter is to serve as notice to you of Simcoe's claim.  Simcoe Credit Union
hereby claims entitlement to all rights under the above-referenced bond.  Please contact us to
discuss the handling of this matter.




                              Very truly yours,



                              J. T. WELLS BLAXTER for
                              Jeffer, Mangels, Butler & Marmaro LLP


:jtb
Enclosure

JMBM | Jeffer Mangels
      Butler & Marmaro LLP

# EXHIBIT B

**Company Information**
Advocacy
Annual Reports
Board of Directors
Financial Ratings
From Our Policyowners
Merger/Amendments
Privacy Practices
Security Practices



## Merging CUNA Mutual Life Insurance Company & CUNA Mutual Insurance Society

The merger of CUNA Mutual Life Insurance Company (CMLIC) with CUNA Mutual Insurance Society (CMIS) received approval from the state of Iowa Insurance Commissioner on September 6, 2007. This approval marks the last stage in the approval process necessary for this merger to become final.

Policyholders of CUNA Mutual Insurance Society (CMIS) and CUNA Mutual Life Insurance Company (CMLIC) overwhelmingly approved merging the two entities on April 20, 2007, and August 2, 2007, respectively. We expect the merger process to be completed by December 31, 2007.

### Merging CMLIC into CMIS

CMIS and CMLIC have operated on an affiliated basis since 1990, when the two companies signed an Affiliation Agreement. Over time, the Affiliation Agreement has helped the companies expand market share and gain efficiencies through shared operations. Today, the two companies have identical Boards of Directors and senior management, and our operations and liabilities are largely shared.

Though we operate these two companies as one in many ways, they remain separate legal entities, each with its own assets, surplus and financial reporting requirements.

Since the companies entered into the Affiliation Agreement in 1990, the Board has considered merging CMLIC and CMIS. Many of the benefits of a merger have already been achieved through the affiliation. A merger, though, delivers additional benefits to policyholders in the form of improved corporate governance, reduced expenses, a one-time tax benefit, and a more effective organization to leverage our assets and surplus.

Until recently, one key obstacle to merger was the existence of a significant, adverse tax provision that imposed a tax on the surplus of mutual life insurance companies. This onerous tax provision was recently repealed, effectively removing this merger barrier. The merger permits the recognition of a one-time financial statement tax benefit of $15-20 million.

There are no longer any good business reasons to delay the merger of the two companies or forestall the delivery of the associated benefits to the policyholders.

#### Additional Information

- Capsule Summary — Merging CMIS and CMLIC ⚸ (12 KB)
- Merger Change Frequently Asked Questions (FAQs) ⚸ (28 KB)

**Financial Statements**

# EXHIBIT B

**Consolidated Generally Accepted Accounting Principles (GAAP) Audits**

CMIS:

- 2006 ⤷ (183 KB/ 54 pages)
- 2005 ⤷ (133 KB/ 40 pages)
- 2004 ⤷ (168 KB/ 36 pages)
- 2003 ⤷ (102 KB/ 35 pages)
- 2002 ⤷ (82 KB/ 34 pages)

CMLIC:

- 2006 ⤷ (162 KB/ 44 pages)
- 2005 ⤷ (293 KB/ 37 pages)
- 2004 ⤷ (124 KB/ 36 pages)
- 2003 ⤷ (1022 KB/ 33 pages)
- 2002 ⤷ (74 KB/ 32 pages)

A

**Annual Reports**

✉ E-mail This

⤷ Adobe® Acrobat® Reader is
required to view these files

| About Us | Careers | Privacy | Security | Terms of Use |
Copyright 2007 CUNA Mutual Group

## Capsule Summary – Merging CMLIC and CMIS

The CMLIC Board of Directors appointed a Special Committee of the Board in 2006 to evaluate from our policyholders' perspective a proposed merger of CMLIC and CMIS. **The CMLIC Special Committee recommended that the CMLIC Board approve the merger. The CMLIC Board approved the merger on June 6, 2007, and the CMLIC Board recommends that you vote FOR approval of the merger.**

CMLIC and CMIS have operated on an affiliated basis since 1990, when an Agreement of Permanent Affiliation (**Affiliation Agreement**) between the two companies went into effect. Over time, the Affiliation Agreement has helped both companies expand market share and gain efficiencies through shared operations. Today, the two companies have identical Boards of Directors and senior management, and their operations and liabilities are largely shared as a result of the affiliation.

The merger will align the legal structure of the two companies to the realities of our markets and the way we currently operate under the Affiliation Agreement. Merging the two organizations also will produce financial benefits to your company, including a one-time federal tax savings in the range of $15 million to $20 million and continuing expense improvements of approximately $500,000 each year. In addition, consolidating the surpluses of the two separate companies will enhance our combined balance sheet.

CMLIC provides insurance and annuities to more than 260,000 individuals. CMIS provides insurance coverage to more than 180,000 individual policyholders and provides business coverage for more than 7,000 credit unions. In the merger, CMLIC will merge into CMIS, and CMLIC will no longer exist.

The mutual ownership structure of CMIS, as the surviving corporation, will not change with the merger. CMIS will continue to be a mutual life insurance company owned by our credit union and individual policyholders. The terms and provisions of your policy will remain the same, and your rights as a policyholder and the premiums you pay will not be affected by the merger. The Boards of both companies believe that the mutual ownership structure currently provides a competitive advantage in the markets served by CMLIC and CMIS.

The proposed merger already has been approved by the Boards of Directors of both CMLIC and CMIS and by the CMIS policyholders. In addition, the merger must be approved by the Iowa Commissioner of Insurance and the Iowa Attorney General, who will review the merger on behalf of the policyholders of both CMLIC and CMIS and hold a public hearing on it on August 8, 2007. We are seeking approval of the merger by at least 2/3 of the votes cast by CMLIC policyholders, in person or by proxy, at the Annual Meeting. If approved, we expect the merger to be completed as of December 31, 2007.

# EXHIBIT C

## Frequently Asked Questions-CMLIC Merger Proposal

**Q:   Why merge CMIS and CMLIC?**
**A:**    We believe a merger is in the best interests of policyholders because it:
   o Aligns the legal structures of the two companies with our business realities
     and the way we currently operate both businesses under the Affiliation
     Agreement.
   o Produces financial benefits, including a one-time tax savings in the range
     of $15 million to $20 million, and continuing expense improvements of
     approximately $500,000 each year.
   o Creates the opportunity to further enhance the financial strength of the
     merged company by combining the balance sheets of the two businesses.
It's very important to understand that the merger will not change your policies,
premiums or right as a policyholder to vote.  CMIS as the surviving corporation
will continue to be a mutual life insurance company.  The Board believes that
mutual ownership offers a competitive advantage in the markets served by CMIS
and CMLIC.  The merger will fully and finally complete the legal integration of
our two insurance companies begun in 1990 with the Affiliation Agreement.

**Q:   What will happen to my insurance policy if the merger occurs?**
**A:**    Nothing.  The terms and provisions of your policy will remain the same as they are
today.  Your rights under your policy and the premiums you pay also will remain
the same.

**Q:   What is the Permanent Affiliation between CMLIC and CMIS?**
**A:**    Under the Affiliation Agreement between CMLIC and CMIS, which became
effective in 1990, our two companies agreed to collaborate to expand financial
products and services for credit union members.  Under this agreement, the two
companies have combined and shared their Boards of Directors, management,
operations and business, but technically have remained separate legal entities.

**Q:   Why can't the Permanent Affiliation continue?**
**A:**    It could, but a merger was always the desired outcome of the Permanent Affiliation.
We believe a merger now is in our policyholders' best interests and will generate
financial benefits for our combined company.  The Special Committee of the
CMLIC Board that was appointed to assess the proposed merger from the
perspective of the CMLIC policyholders recommended that the CMLIC Board
approve the merger.  The CMLIC Board did so and is now recommending that you
vote in favor of the merger.  Not only will the merger formalize the current
combined management and shared operations of the two businesses, but it also
creates the opportunity to further enhance our financial strength as a merged
company.  The merger will fully and finally complete the legal integration of the
two insurance companies that began in 1990 with the Affiliation Agreement.

**Q:   What is involved in the merger of CMLIC and CMIS?**
**A:**    CMLIC and CMIS have operated on an affiliated basis since 1990 when the
Affiliation Agreement between our two companies became effective.  Over time,



**EXHIBIT C**

the Affiliation Agreement has helped our companies expand market share and gain efficiencies of shared operations. Today, our two companies have identical Boards of Directors and senior management, our operations are largely combined and our liabilities are largely shared. The merger will fully and finally complete the legal integration of our two insurance companies that began in 1990 with the Affiliation Agreement. In the merger, CMLIC will be merged into CMIS, and CMLIC will no longer exist as a separate legal entity.

**Q:** **What are the potential advantages and disadvantages of a merger?**
**A:** *Potential advantages include:*

– Clarifying past confusion among some customers, regulators, rating agencies and others about our identity and brand.

– Enabling us to continue operating as a mutual company, in contrast to certain of the alternatives.

– Combining the financial strength of the two companies.

– Producing financial benefits including a one-time tax savings in the range of approximately $15 million to $20 million and annual cost savings of approximately $500,000.

*Potential disadvantages include:*

– CMLIC's identity will be eliminated; however, we believe that doing business as a single company will help achieve our branding goals and a clearer market identity.

– A merger will not immediately address any eventual long-term capital needs. However, we believe that the enhanced financial strength of the combined company will improve our ability to fund capital needs internally.

We do not view either of the foregoing as major disadvantages and, further, we believe that the potential disadvantages that could exist are outweighed by the potential advantages. Some may argue that a merger is disadvantageous because policyholders receive no stock or cash in a merger, as they would in a demutualization. However, we believe that the mutual ownership structure currently provides a competitive advantage for the markets served by CMLIC and CMIS.

**Q:** **Given the advantages of the merger, why hasn't this been proposed in the past?**
**A:** The merger has been contemplated at various times over the past 16 years, but tax and other reasons caused its postponement. Today those former impediments have been largely resolved or mitigated.

**Q:** **What are the potential advantages and disadvantages of maintaining the status quo?**

**A:** Though the Affiliation Agreement produced many joint benefits to the two companies, it is important to understand that it could not produce the full savings or enhanced financial strength to be gained from a full merger. Even with affiliation, our current structure of two mutual insurers can never be as cost-efficient as a single, legally merged entity. Importantly, our current affiliated structure also limits our ability to generate capital for future potential needs should market or industry conditions change.

**Q:** **The detailed policyholder packet includes information about demutualization. What is "demutualization"? Is it an option the Board of the surviving corporation is considering if CMLIC and CMIS merge?**

**A:** CMLIC and CMIS are both mutual insurance companies, meaning they are owned by their policyholders. If the merger of CMLIC and CMIS occurs, the merged entity will continue to be a mutual insurance company, owned by its policyholders.

Demutualization is the process of converting a mutual insurance company into a stock insurance company owned by shareholders – not policyholders. Policyholders receive stock, cash or other consideration in exchange for their ownership interests when a mutual company demutualizes.

There are no plans to demutualize, regardless of whether the merger occurs. The Boards of both companies believe that the mutual ownership structure currently provides a competitive advantage for the markets in which CMLIC and CMIS operate.

**Q:** **What might prompt the Board of the surviving corporation to seek to demutualize CMIS in the future?**

**A:** The Board of the surviving corporation has no intention to seek to demutualize CMIS in the future, whether or not the merger occurs. If this were to change, the primary driver would probably be a need for significant capital to expand our company or to acquire new business, or if tax or other regulatory or economic factors were to significantly change the credit union marketplace. This is because a mutual company can raise capital only by issuing surplus notes or possibly by selling some of the stock of a subsidiary company. A mutual has no stock of its own to sell. However, the current capitalization of both companies is strong. After the merger, CMIS is anticipated to have more than $1.9 billion in surplus to policyholders presented on a GAAP basis and excess capital. We will also have significant capacity to issue surplus notes if and when needed.

**Q:** **Why isn't CMLIC the surviving corporation?**

**A:** Either could survive -- it should make little difference to policyholders which company survives. With CMIS as the surviving entity, fewer licenses will have to be replaced in the surviving corporation.